McIlvaine, J.
The original action was brought in the •court of common pleas of Defiance county, to restrain the collection of a tax, upon the duplicate in the hands of defendant Crunldlton, treasurer of said county, for collection, amounting to $953, assessed against the south-east quarter of section twenty-two, and the south-west quarter of section twenty-three, in Tiffin township, in said county.
It is alleged that this tax was illegally assessed against said property under color of proceedings to locate, establish, and construct a township ditch, by the trustees of said township, claiming to act under authority of the act of May 1, 1862 (59 O. L. 93), entitled “ an act to provide for locating, establishing, and constructing ditches, etc., in townships.”
One half of the amount of this tax was assessed against •each of said quarter sections.
At the time the ditch was located Horace Sessions was the sole owner of the south-east quarter of section twenty-two, and resided in said county of Defiance; and one William Buchanan was sole owner of the south-west quarter of section twenty-three, and was a non-resident of said county.
Shortly after the tax had been entered on the duplicate .and placed in the hands of the treasurer for collection, Buchanan sold and conveyed his tract to Sessions, and soon *355 thereafter Sessions died, leaving the plaintiff his heir at law, to whom these lands descended.
The cause was submitted to the court below upon the petition, answer, reply, and testimony, and a final decree was entered dismissing the petition at the cost of plaintiff.
A bill of exceptions setting forth all the testimony, and also the exceptions taken to certain rulings of the court •during the progress of the trial, were made a part of the record.
It appears from the record that a petition, praying for the location of the ditch, was duly filed with the township clerk, and notice of the pendency, prayer, and time and place for hearing the petition was published two weeks in the Defiance Democrat, before the time appointed for hearing.
But no bond was filed with the township clerk, nor was any notice, in writing, of the pendency, prayer, and time and place of hearing, served upon Horace Sessions.
At the time and place appointed for hearing the petition the trustees met, and without finding that the bond had been filed and notice given, as required by the statute, they •proceeded to locate and establish the ditch through the lands of Sessions and Buchanan, neither of whom were present or had actual notice of the meeting.
No claim was made by any person for compensation for lands appropriated, and no compensation was allowed.
At the same meeting the ditch was divided into sections and the time fixed for the completion of the work.
At the expiration of the time so fixed, the work was sold, .and the amount of sales, with a description of the lands, was certified to the auditor of the county, who placed the same upon the tax duplicate.
The amount thus certified to the auditor was the cost of constructing the ditch through the lands described, and the costs of sale.
This brief statement of the facts is collected from a voluminous record; but is sufficient to a full understanding of the -questions disposed of in this case.
The sixth error assigned, to wit, “ That the court erred in *356 ordering the plaintiffs petition to be dismissed,” is sufficient to raise all the questions involved in the case
It is claimed by plaintiff in error that the act of May 1, 1862, is unconstitutional, because :
1 It attempts to appropriate private property for private uses without the consent of the owner.
2. It does not provide for compensation to the owner, first to be made in money, or first to be secured by a deposit of money.
3. The power of taxation, by way of assessment upon the lands along the route of the ditch, cannot be conferred upon township trustees.
1. The 19th section of the 1st article of the constitution provides “ that private property shall ever be held inviolate, but subservient to the public welfare.”
And the first section of this statute provides, “that the township trustees of any township in this State shall have-power, whenever in their opinion the same is demanded by or will be conducive to the public health, convenience, or welfare, to cause to be established, located and constructed, as-hereinafter provided, any ditch, drain, or watercourse within such township.”
The question is made, whether the uses and purposes named in the statute are within the meaning of “ public welfare,” as used in the constitution. "We have no doubt that both public health and cormenience are embraced in “ public welfare.” That this statute may be used (and probably is sometimes) for the purpose of promoting private interests, in the name of “ public health and convenience,” we need not stop to deny. It is enough for us to know that the principal object intended and authorized by the legislature was the pwMo welfare ; and -that whenever private interests are promoted by the making of ditches, etc., they are merely incidental, when the statute is properly executed. See Reeves v. Treasurer, etc., 8 Ohio St. 333.
2. By the last clause of the same section of the constitution it is provided, “ And in all other cases [than time of war, or other public exigency, and roads] where private *357 ¡property shall he taken for a public use, a compensation therefor shall first be made in money, or first be secured by a deposit of money; and such compensation shall be assessed by a jury without deduction for benefits to any other property of the owner.”
The provisions of the statute which are to be considered in connection with the above provisions of the constitution are as follows : By the 3d section provision is made for the application for compensation, by owners of land, along the line of the proposed ditch; and by the 4th section it is made the duty of the trustees to examine and determine all applications for compensation, and to specify the several amounts of compensation, by whom, and to whom, to be paid, and the time of payment. By the 6th section provision is made for an appeal to the probate court; and by the 7th section for a trial by jury; and by the 11th section it is declared that no order for the opening or sale of the ditch shall be made until the full amount of such compensation for land appropriated shall have been paid.
It is true that the statute does not specifically, state who shall pay the amount of compensation allowed for appropriated lands, or what particular persons those are to whom it shall be paid. But a reasonable construction of the language employed, in connection with other provisions of the statute, clearly shows the persons to whom, compensation is to be paid are the claimants, and the persons by whom it is to be paid are the petitioners or others who may desire the improvement. It is clear that no order can be made for the opening of the ditch until the compensation for lands appropriated shall have been paid, and there is no power given to the trustees to compel the claimants to pay any portion of their own damages.
The amount of compensation for lands appropriated is no part of the sum which may be certified to the auditor to be placed on the duplicate, to be collected in the form of taxes.
3d. The 7th section of the 10th article of the constitution provides, “ That commissioners of counties and trustees of *358 townships' and similar boards, shall have such power of local taxation, for police purposes, as may be prescribed by law.”
That the power to make special assessments upon real estate, peculiarly and specially benefited by local improvements, for the cost and expense of such improvement, is a taxing power, is fully settled by decisions in our own State and elsewhere. ,See 5 Ohio St. 243 ; 8 Ohio St. 333 ; 4 Comstock, 440. And that such assessments are a species of local taxation is perfectly clear.
Township trustees have power of local taxation with two limitations only, to wit: it must be prescribed by law, and can be exercised for “ police purposes ” only.
The mode of exercising the power of local taxation by trustees in the making of ditches, etc., is prescribed by the act of May 1st, 1862. And when exercised for the purpose of constructing ditches, drains, and watercourses, which are demanded by, or are conducive to, the public health, convenience, or welfare, it is within the constitutional meaning of “police purposes.”
“ Police piirposes ” ordinarily arise in the administration of the affairs of cities and towns, in the exercise of their power and duty to promote the public health, convenience, and welfare; but, by the 7th section of article 10, taxation for police purposes is expressly conferred on trustees of townships.
That making assessments is not within the meaning of the word “ taxing ” as used in the 2d section of the 12th article of the constitution, has been settled by this court in the case of Hill v. Higdon, 5 Ohio St. 243, where Banney, O.J., says, “ That where taxation is spoken of in the 2d section of the 12th article, reference is made to the general hwrdens imposed for the purpose of supporting the government, and the revenue raised is expended for the equal benefit of the public at large, while the power of ‘ assessment/ referred to in the 6th section of the 13th article, although resting upon the taxing power, was intended to describe a distinct and well known mode of laying a local burden upon particular prop *359 erty, with reference to peculiar and special benefits derived to such property from the expenditure of the money.”
Whether exercised by cities and villages or by townshij? trustees, the power of making assessments rests on the same principle — the principle of local taxation. And assessments in both cases are alike exempt from the constitutional requirment, that all taxation for general revenue purposes must be raised by a uniform rule upon all property according to its true value in money.
Another view of the origin of the power of assessment by township trustees may be taken. Independent of the special provisions of the 7th section of the 10th article, the legislature may confer upon township trustees the power to-assess the cost of making ditches, etc., when the public welfare demands their construction, upon lands specially benefited, under the general grant of legislative power conferred on the general assembly by the constitution.
As to this proposition we will content ourselves by referring simply to the exhaustive argument in the case of Reeves v. Treasurer of Wood County, 8 Ohio St. 333. The decision in that case shows that the power of township trustees to assess the burden of local improvements upon property benefited thereby, and in proportion to the benefit, may be conferred upon them by the legislature, under the general grant of legislative power given by the constitution to the-general assembly.
We will now proceed to inquire into the regularity and validity of the proceedings had by and before the trustees.
The second section of the act of May 1, 1862, provides,. “ Before the township trustees shall take amry stej?s towards-locating or establishing any ditch . . . there shall be filed with, the township clerk a petition, . . . and there shall at the same time be filed a bond, with good and sufficient sureties, to the acceptance of the clerk, conditioned to pay all expenses incurred, in case the trustees refuse to grant the prayer of the petition;. and it shall be the duty of the petitioner, immediately upon, the filing of such petition, to notify, in writing, tire owner, or *360 one of the owners, of each tract of land along the line of the proposed ditch, of the pendency and prayer of said petition, and of .the time and place when and where the same shall be heard,” etc. And by the fourth section, “ That said trustees, on the day set for hearing of said petition, shall, if they find that said bond has been filed, and said notice given, proceed to hear and determine said petition,” etc.
It clearly appears from the record in this case that no bond was filed, as the statute requires, and no notice in writing was given to Horace Sessions of the pendency and prayer of the petition, or of the time and place for its hearing. But the trustees, without finding that the bond and notice had been given, proceeded to locate and establish the ditch, etc.
The filing of a bond, with the petition, and the finding by the trustees that the bond has been filed and notice given, as required by the statute, are conditions essential and precedent to the right of the trustees to hear and determine the petition. “ The right to hear and determine a cause is jurisdiction,” and under this statute no jurisdictional power vests in the trustees to locate and establish a ditch until the concurrence and performance of these conditions has taken place. See Ferris v. Bramble, 5 Ohio St. 109.
The proceedings of the trustees in locating this ditch, and appropriating the lands of Horace Sessions therefor, were without authority of law and void. No legal ditch was or has been established and constructed under these void proceedings. No legal right has been acquired by the trustees •to maintain it, as against Sessions, or those holding under him. And as such ditch is an entirety, all its parts must stand or fall together.
As the right of the trustees to exercise the power of assessment, for the cost of construction, upon the lands benefited by the ditch, depends, by force of the statute, upon the precedent establishment of a legal ditch by the rightful exercise of the power of eminent domain, it follows that the tax complained of was illegally assessed, and ought not to be collected, unless we find that, by some other rule of law, the plaintiff’s right to complain has been taken away.
*361 It is claimed by defendants that subsequent legislation has had that effect.
The act of May 1, 1862, was repealed by the 16th section of the act of May 6, 1868 (65 O. L. 161), which provides, “ that the proceedings under this act, and the said act passed May 1,1862, herein repealed, shall not be held to be void on .account of any merely technical informality, or irregularity in the form of the petition, or any informality appearing in the record of the proceedings of the township trustees, or other proceedings pertaining thereto; and the collection of the taxes and assessments ordered in proceedings under the provisions of this act, or the said act herein repealed, shall not be enjoined or held to be void on account of any merely technical irregularity or defect in such proceedings as aforesaid.”
The omissions to file the bond and give written notice to resident owners of land along the route of the proposed ditch are not merely technical irregularities ánd defects, within the meaning of this proviso. But the filing of such bond and the giving of such notice are jurisdictional facts, and essential to the right of the trustees to “hear and determine the petition.”
Nor will the provisions of the act of April 18, 1870 (67 O. L. 93), relieve this case from the fatal jurisdictional defects before stated. It is not our purpose now to give any opinion as to the effect of the provisions of this supplementary act. It is enough for the purposes of this case to say that the remedies provided by it are only applicable to proceedings had under the act of May 6, 1868, and acts amendatory thereof.

Judgment reversed and cause remcmded.

Soott, C.J., and Welch, White, and Day, JJ., concurred.