NATHANIEL THAYER AND CHARLES MERRIAM, TRUSTEES, ETC., v. THE CITY OF GRAND RAPIDS.

*Municipal corporations—Public improvements—Assessment—Surplus —Assumpsit.*

1. A city charter provided for the apportionment among the property-owners assessed for the expenses of public improvements of any surplus remaining after the payment of such expenses, and for the payment to each of his proportion on demand. Eight distinct improvements were made, in some of which there was a surplus and in others a deficiency. The surplus was transferred to the city contingent fund, but no apportionment was made as provided by the charter. Certain property-owners who had been assessed for *all* of the improvements, on the failure of the common council to take the necessary steps to ascertain their proportion of the surplus, and to pay the

same, brought an action of *assumpsit* against the city to recover the money. The city contested *all* liability, as well as the amounts,, and also contended that plaintiffs' *only* remedy was by *mandamus* to compel the common council to apportion the surplus, and pay it over. And it is held that the objection is purely technical, and that the city will not be permitted to raise it after its virtual denial of the plaintiffs' rights.

2. And it is further held that the city cannot set off in such suit the plaintiffs' proportion of the deficiency against their share of the surplus, but that each improvement must stand by itself, and that the city can only provide for such deficiency by another assessment in each case where one is found to exist.

3. Section 3, title 10, of the charter of the city of Grand Rapids (Act No. 282, Local Acts of 1877), which provides that whenever there shall be found in the city treasury any sum of money not otherwise appropriated, or whenever any city fund shall contain a balance after all legal demands against it shall have been satisfied, the same shall be transferred by the city treasurer to the general fund under the direction of the common council, is not applicable to special improvement funds.

4. The expenses of the board of review, the cost of making the estimates, plans, and assessments, of printing, abstracts of title, and books for making the assessment rolls, are required to be included in the expense of a public improvement in the city of Grand Rapids, under section 3, tit. 6, of its charter (Act No. 258, Local Acts of 1883).

Error to superior court of Grand Rapids. (Burlingame, J.) Argued July 2, 1890. Decided August 1, 1890.

*Assumpsit.* Both parties bring error from a judgment in favor of the plaintiffs. Affirmed. The facts are stated in the opinion.

*Wm. Wisner Taylor* (*J. W. Ransom*, of counsel), for defendant, contended:

1. In support of the claim that the remedy, if any, is by *mandamus*, counsel cited 2 Dill. Mun. Corp. § 832; *Hull v. Supervisors*, 19 Johns. 259; *Gourley v. Allen*, 5 Cow. 644; *People v. Railroad Co.*, 58 N. Y. 152; *People v. Supervisors*, 84 Ill. 303; *In re Turner*, 5 Ohio, 542; *People v. Ins. Co.*, 19 Mich. 392.

*More & Wilson*, for plaintiffs, contended:

1. Plaintiffs' demand comes fairly under the count for money had

and received by the defendant for their use; citing *Beardslee v. Horton*, 3 Mich. 5J0; *Moore v. Mandlebaum*, 8 Id. 433; *Catlin v. Birchard*, 13 Id. 110; *Spencer v. Towles*, 18 Id. 9; *Willson v. Owen*, 30 Id. 474; *Mason v. School-disi.*, 34 Id. 228; *Donkersley v. Levy*, 38 Id. 54; *Johnson v. Ins. Co.*, 39 Id. 33; *Barnard v. Colwell*, Id. 215; *Endriss v. Chippewa Co.*, 43 Id. 317; *Hall v. Kimmer*, 61 Id. 275; and this action does not depend on any contract.

2. Defendant is liable on the common counts under section 14, tit. 6, of its charter (Local Acts of 1877, p. 161).

GRANT, J. The charter of the city of Grand Rapids contains the following provisions:

" Whenever the common council shall determine that the whole or any part of the expense of any public improvement shall be defrayed by an assessment on the owners or occupants of houses and land to be benefited thereby, they shall declare the same by an entry in their minutes, and after ascertaining, as provided in section two of this title, the estimated expense of such improvement, they shall declare by an entry in their minutes whether the whole or what portion thereof shall be assessed to such owners and occupants, specifying the sum to be assessed, and the portion of the city which they deem to be benefited by such improvement; the cost and expenses of making the estimates, plans, and assessments incidental thereto shall be included in the expense of such improvement." Section 3, tit. 6, of the charter (Local Acts of 1883, p. 416.)

" If, upon completion of any such improvement for which such assessment shall have been made, it shall appear that a greater amount has been assessed and collected than is necessary to defray the expenses thereof, the common council shall apportion such excess among the persons and property assessed, in proportion to the amount collected of them, and shall pay the same to such persons, and the owners of such property entitled thereto, on demand." Section 14, tit. 6, of the charter (Local Acts of 1877, p. 161.)

Eight special public improvements, consisting of sewers, and grading and graveling streets, were duly made by the city authorities, and the assessments levied. The plaintiffs were the owners of valuable lands in the various

assessment districts within which these improvements were
made.  Upon the completion of these improvements, there
was found to be a surplus in the treasury upon some, and
a deficiency upon others, after deducting certain expenses
hereinafter mentioned.  The council made no reassess-
ment in those districts where there was a deficiency.  The
surplus in each case was, by resolution of the council,
transferred from the special fund to the general fund of
the city.  The following expenses were paid by the city
out of the general fund, and not out of these special
funds, viz.: Expenses of board of review in making rolls;
printing, consisting of advertising for proposals, notice of
hearing appeals, etc.; expenses for surveying and engineer-
ing; abstracts of title; and cost of assessment roll books.

September 19, 1887, plaintiffs presented a petition to
the common council, showing the cost of the improve-
ments, the amount assessed against them, and showing
that the amount due them was $551.64, and demanding
payment.  The petition was referred to the committee on
ways and means, who reported the same back to the coun-
cil, November 28, 1887, recommending an examination
of the tax rolls, and that the amount of such overtax, if
any, be paid back, after deducting all claims which the
city might have against said fund.  This report was laid
upon the table, and nothing more appears to have been
done by the council in regard to it.

Plaintiffs brought an action of *assumpsit,* June 5, 1888,
upon the common counts.  A bill of particulars was fur-
nished showing the amounts raised for each improvement,
the amounts paid by plaintiffs, the amounts unexpended
and transferred to the general fund, and the amount
due the plaintiffs.  Upon the accounts as they stood,
there was a surplus in each case.  In some cases the sur-
plus was wholly wiped out by deducting the expenses
above referred to, and a deficiency shown, while each

amount was reduced by the deduction of such expenses.

The case was tried before the court without a jury, and the judge found the following conclusions of law:

"1. The plaintiffs are entitled to recover in this suit their proportion of the balance remaining in said special funds after the payment of all expenses chargeable to said funds.

"2. The defendant is entitled to deduct from the amount transferred from the said special funds to the general fund, as hereinbefore set forth, the amounts paid by said defendant from its contingent and general funds for the salaries of the board of review and equalization in making said rolls, for printing incident to the making of said rolls and the collection thereof, for the engineering and surveying done in making said improvements, for the abstracts used by the board of review and equalization in making said rolls, and for the books on which said rolls were made."

After deducting these items of expense, the court found the amount due, with interest from the date of demand, to be $318.33, for which judgment was rendered.

1. It was said in behalf of defendant that *assumpsit* will not lie, but that plaintiffs' only remedy was by *mandamus* to compel the common council to apportion the surplus, and pay it over. The claim is not well founded. The defendant contested all liability, as well as the amounts. The plaintiffs had made a demand, which the defendant ignored. The action for money had and received is an equitable one, and can be maintained for money which in equity and good conscience belongs to the plaintiff. The objection is purely technical, and the defendant will not now be permitted to raise it after its virtual denial of the plaintiffs' rights.

Besides, it has misappropriated the funds by transferring them to the general fund, and therefore no longer has any specific fund to apportion, as the charter requires. Plaintiffs must now be paid out of the general fund. This transfer was undoubtedly made under the authority

supposed to be conferred by section 3, tit. 10, of the charter (Local Acts of 1877, p. 179), which reads as follows:

"Whenever there shall be found in the treasury of said city any sum of money not otherwise appropriated, or whenever any fund of said city shall contain a balance after all legal demands against it shall have been satisfied, the same shall be transferred by the city treasurer to the general fund under the direction of the common council."

But this section is not applicable to these special improvement funds.

2. From the amount due the plaintiffs in each fund the court deducted the expenses of the board of review, the cost of making the estimates, plans, and assessments, printing, abstracts of title, and books for making the assessment rolls. We think this was correct. Plaintiffs contend that these were to be paid out of the general or contingent fund. They were paid in the first instance out of such fund, and the charter provides that these preliminary expenses may be so paid. Section 7, tit. 6 (Local Acts of 1877, p. 159), provides:

"The members of said board of review and equalization, as such commissioners [to make these special assessments], as by this act constituted, shall each receive the sum of three dollars per day, when actually employed, to be paid out of the contingent fund of said city."

If this provision were to be interpreted by itself, no doubt would arise. But the provision of the statute first above quoted expressly makes the cost and expenses of the estimates, plans, and assessments incidental thereto a part of the expense of the improvements. There could be no purpose in this provision other than to make the property-owners benefited bear this expense. With this in mind, any apparent conflict or inconsistency between the two provisions disappears. The court included all these necessarily incidental expenses, and excluded others

which were not contemplated by the charter. This we think was correct.

3. There were eight distinct special improvements. The defendant sought to set off the plaintiffs' proportion of the amount of the deficiency against the amounts due them where there was a surplus. Each improvement must stand by itself, and the only way in which the city can provide for such deficiency is by another assessment in such case. A debit in one fund cannot be offset by a credit in another fund.

Both parties having appealed, and the judgment being affirmed, no costs will be allowed.

The other Justices concurred.