McClintock *v*. Bovay.

Opinion delivered March 31, 1924.

1. EMINENT DOMAIN—DELEGATION OF POWER.—A State may delegate its power of eminent domain to public carriers and other corporations conducting a business in which the public has an interest.

2. EMINENT DOMAIN—HIGHWAY.—An order condemning land under Crawford & Moses' Dig., § 5249, to open up a highway to connect an established road with a proposed private toll-bridge, is not for the benefit of the bridge company but for the benefit of the public, and the county is responsible for the compensation found to be due owners for the right-of-way for the public road.

3. EMINENT DOMAIN—CONDEMNATION FOR HIGHWAY—COUNTY LIA-
BILITY.—Though there was an agreement between the county and
the promoters of a toll-bridge project that the latter were to pay
the cost and damages involved in condemning land for a connec-
tion between the toll-bridge and an established road, the county
was nevertheless liable to the owner of the land sought to be
condemned.

4. EMINENT DOMAIN—HIGHWAY—WIDTH OF RIGHT-OF-WAY.—It was
not an abuse of discretion to condemn a strip 200 feet wide for
a proposed highway where the roadway was to be 26 feet wide
and a very high dump was to be constructed, necessitating the
use of much earth.

Appeal from Prairie Circuit Court, Northern Dis-
trict; *George W. Clark,* Judge; affirmed.

*Gregory & Holtzendorf* and *Emmett Vaughan,* for
appellant.

This is an attempt to take private property for pri-
vate use, under the guise of taking it for public use, con-
trary to our Constitution. Such attempts have not met
with this court's approval heretofore. 15 Ark. 33; 57
Ark. 359; 97 Ark. 495; 99 Ark. 61; 64 Ark. 357. The
power of the county court, under C. & M. Digest,
§ 5249, to open new roads, make necessary changes in old
roads, etc., in order to conserve the convenience of public
travel, is not denied; but we do deny the right of the
county court to take a strip of land 200 feet wide for any
other purpose. The above statute contemplates pay-
ment of damages by the county; yet the order of the
court fixes the expense upon the bridge company, without
settling the amount to be paid. The county court has no
power to settle the amount the bridge company would be
required to pay.

The statutes provide a means whereby the bridge
company can secure the land, and it has no right to
dodge the statute in order to avoid the expense. C. & M.
Digest, §§ 10261, 10263. Even if the county court had
the power to open this road and declare it a highway, it
would not, under the facts and circumstances of this case,
have the power to appropriate for the use of the public
service corporation material with which to build the road.

Not even the Legislature, much less a county court, has the power to say how far the power of eminent domain may extend. That is a judicial question. 9 S. E. 273; 21 W. Va. 548; 1 N. J. 694; 43 S. E. 194; 111 Mass. 454. If appellant's property can be taken at all for the purposes disclosed in the record, only so much thereof as would be necessary for the convenience of public travel can lawfully be taken. 204 Mass. 483; 91 N. E. 405-578. In the enactment of the statute, § 5249, C. & M. Digest, the Legislature did not contemplate the arising of such a condition as this. Moreover, the Constitution forbids the enactment of any law whereby private property may be taken or damaged, for public use, without just compensation. Art. 2, § 22, Const. 1874. 106 S. E. (Va.) 403; 80 Va. 616; 43 S. E. 194; 31 Am. Dec. 313; 101 S. E. 351; 91 N. E. 405; 102 N. E. 619.

*Cooper Thweatt* and *Chas. B. Thweatt,* for appellees.

The order opening the road was made under authority of C. & M. Digest, § 5249. The court has already fully considered and upheld this statute. 134 Ark. 121. The only judicial question in this case is whether or not the land was taken for public use. If taken for that purpose, it will be upheld as a matter of right. 97 Ark. 89. The validity of C. & M. Digest, § 10263, is doubtful, since it grants a new right, and the law governing the remedy is not reenacted. 250 S. W. 889. Also it authorizes the building of bridges, and fixes the rate of toll, thereby excluding the jurisdiction of the county court. 152 Ark. 391; 159 Ark. 652. The taking of property for a highway is universally held a taking for public use. 43 Sup. Ct. 692. The test as to whether or not a road is for the public use is whether or not the public generally has the right to use it. 78 Ark. 20; 15 Ark. 49; 149 Ark. 489; 142 Ark. 420. See also 57 Ark. 365; 97 Ark. 89; 104 Ark. 352; 132 Ark. 430; 43 S. C. 689. The loss of ferry rights is not an injury for which compensation could be had, where the loss is not due to any wrong committed by the county or by the bridge company. 52 Ark. 64.

Appellant's ferry right consists merely in the right to an annual license to operate a ferry so long as the public convenience requires it, and may be abolished to conform to the public convenience. 95 Ark. 342; 130 Ark. 291. The right of eminent domain includes the taking of land necessary for procuring the dirt with which to build the embankment of a public road. 140 Ark. 246; 20 C. J. 589; 29 C. J. 544.

McCulloch, C. J. This is a proceeding originating in the county court of Prairie County on the petition of appellees, citizens of the county, to open up a public road, or, rather, a lateral to an established public road, so as to connect with a bridge to be constructed over White River, near Devalls Bluff.

Pursuant to statute (Crawford & Moses' Digest, § 10255 et seq.) the county court granted to Harry E. Bovay, one of the appellees, a franchise covering a series of years, to construct and maintain a toll-bridge across White River, near Devalls Bluff. The location of the bridge was selected, under requirements of the War Department of the United States, about five hundred yards south, or down-stream, from the present bridge of the Chicago, Rock Island & Pacific Railway Company.

Appellant J. M. McClintock owns land on both sides of White River from the Rock Island bridge down to and including the site of the proposed bridge, and he operates a licensed ferry about, or nearly, midway between the Rock Island bridge and the site of the proposed bridge. There is an improved public highway running east and west, which connects with the ferry on each side of the river, and the effort in the present proceeding is to lay out a public road on each side of the river, running from the end of the bridge to the improved highway.

Bovay assigned his franchise to the White River Bridge Company, a corporation, which proposes to construct and maintain the bridge under the franchise. Bovay appears in this proceeding, not as a representative of the holder of the franchise, but as a citizen.

The petition was filed by numerous citizens, and described the proposed route of the new roads, or laterals, running from the established highway to the bridge, accurately describing the route, and asking that the county court make an order laying out the route as a public highway. The petition was filed pursuant to act No. 422 of the General Assembly of 1911, p. 364 (Crawford & Moses' Digest, § 5249), and the court made an order on October 25, 1922, granting the prayer of the petition and laying out the road two hundred feet wide. Later during the term appellant filed his petition, alleging that the order opening the road had been made without notice to him, and asking that the order be set aside, and that he be permitted to intervene for the purpose of protesting against the granting of the petition. The court set aside the order, and, upon a hearing of appellant's petition, reentered the order, with changes with respect to the giving of a bond, which are unimportant in the present status of the case. Appellant prosecuted an appeal to the circuit court, where the case was heard anew on oral testimony, and judgment was rendered by the circuit court on March 20, 1923, opening the road in accordance with the prayer of the petition and in accordance with the previous order of the county court. The order of the circuit court, after reciting the appearances and the issues involved and describing in detail the route of the road, reads as follows:

"It is thereupon ordered, considered and adjudged by the court that a public road, having for its center line the line above described, said road to be 200 feet in width, being a strip 100 feet wide on each side of said center line, be and the same is hereby opened as and declared to be a public road and highway of Prairie County, to be a first-class road; and that said Harry E. Bovay, and his successors and assigns under the franchise above mentioned, are hereby authorized and empowered to enter upon and improve said public road at their own expense, in such manner as will make the same suitable for passing to and from said bridge and for connecting said

bridge with the improved highway of Road Improvement District No. 1; and under no condition shall Prairie County be liable for the payment of any part of the opening, improving or surfacing of such road as provided for."

Appellant filed a motion for a new trial, and also filed a bill of exceptions bringing the oral proceedings into the record, and has prosecuted an appeal to this court.

Appellant appeared in the proceedings only as a protestant against the opening of the proposed road, and not as a property owner claiming damages. He contends, as a reason why the order is erroneous, that his property is being wrongfully taken by a private corporation, but he has filed no claim for damages, and the question of damages for the taking of the right-of-way is not involved.

The statutes of this State provide that a corporation organized under the laws of the State to construct a toll-bridge over a navigable stream shall have the right to construct suitable approaches and ways, and to condemn land under the State's power of eminent domain, the same power as is conferred for railroad purposes (Crawford & Moses' Digest, §§ 10261, 10263), and the contention of appellant is that this proceeding is nothing more nor less than an attempt on the part of the holder of the bridge franchise to condemn appellant's property for the use and benefit of the corporation which holds the franchise. It is unnecessary for us to determine what the effect would be if such were the character of the proceeding.

It is a rule of general application that a State may delegate its power of eminent domain to public carriers and other corporations conducting a business in which the public has an interest, and that rule has been adopted by this court. *Neimeyer & Darragh* v. *Little Rock Junction Ry.*, 43 Ark. 120; *Mountain Park Terminal Ry. Co.* v. *Field*, 76 Ark. 239. In those cases it was held that the statute makes no provision for raising an issue at law

concerning the necessity and propriety of the condemnation, but that a court of equity could entertain jurisdiction on an allegation of fraud in the attempt to condemn private property for private use under the guise of public use. This case was tried at law, on appeal from the county court, and there has been no attempt to carry the case into a court of equity on allegations that would give that court jurisdiction. It is unnecessary to pursue this part of the discussion, for we are clearly of the opinion that the condemnation invoked by petitioners is under the statute referred to above (Crawford & Moses' Digest, § 5249), which authorizes the county court to open new roads or to make changes in old roads without notice to the property owners, and gives a certain time within which claims for damages may be presented. The validity of this statute has been upheld in the case of *Sloan* v. *Lawrence County*, 134 Ark. 121. In disposing of that case we said:

"The statute under consideration meets every constitutional requirement. It authorizes the county court to determine without notice the necessity for taking lands for public use, but contains ample provisions concerning notice and hearing upon the question of compensation, or damage, which mean the same thing in that connection. There is no provision for formal notice, but the order itself and the taking of the property thereunder are, in the very nature of things, acts of such publicity as to constitute notice, and the property owner is given twelve months within which to apply to the county court for an allowance of compensation, and the hearing is then given on that question. Of course, all that has been said in this opinion has reference solely to condemnation for strictly public uses in its broadest sense, and has no reference to condemnation for the benefit of private corporations exercising a public or *quasi*-public function."

The condemnation was not, in this instance, made for the benefit of the bridge company, but for the benefit of the public, and the county is responsible for the compensation found to be due owners for the right-of-way

for the public road.   It is true that the form of the order
of the circuit court was that the petitioners—Bovay and
others—should proceed to open the road, and that
"under no conditions shall Prairie County be liable for
the payment of any part of the opening, improving or
surfacing of such road as provided for."   This puts the
expenses of improving the public road on the holder of
the franchise, and the evidence shows that there had been
an agreement between the holder and the county court
that the former should pay the expense, but this judgment
does not relieve the county of the cost of paying compen-
sation to the landowner whose property is taken under
condemnation.   The fact that the expense of opening and
improving the road is to be paid by the bridge company,
even if treated as a mere gratuity, does not affect the
validity of the order of condemnation, for the rights of
the public are not prejudiced thereby.   We are unable
to see where appellant's rights have been invaded by this
order of condemnation.   The lands are sought to be
taken, not for private but for public use, and are taken
under a valid statute which affords a means of compen-
sation.   What compensation appellant is entitled to, and
whether or not he has waived his rights to compensation
by delay, is not involved in the present inquiry, as no
such question has been raised in this proceeding.

Something is said in appellant's brief about the
width of the proposed road being excessive, but the
answer to that contention, or rather suggestion, is that
it is a matter of discretion for the county court to deter-
mine the necessary width of the road.   It is shown that
the roadway is to be twenty-six feet in width and that a
very high dump is to be constructed, which makes it
necessary to have plenty of earth for raising the dump.
The evidence is not sufficient to show that the court
abused its discretion in determining that 200 feet right-
of-way was necessary in the construction of the road.

We find no error in the proceedings, and the judg-
ment is therefore affirmed.